**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.                                           16-CR-060-A
**DECISION AND ORDER**

DUKE JIMENEZ,

        Defendant.
_____

This case is before the Court on the Defendant's objections to Magistrate Judge Roemer's Report and Recommendation. For the reasons stated below, the Court overrules the Defendant's objections and adopts Judge Roemer's recommendation to deny the Defendant's suppression motion.

**BACKGROUND**

The Defendant is charged with five counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e); and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). In proceedings before Judge Roemer, to whom the Court referred this case pursuant to 28 U.S.C. § 636(b)(1), the Defendant moved to suppress evidence recovered from searches of both his cell phone and his mother's apartment, where he lived prior to his arrest in this case.

Each of those searches was authorized by a warrant. The Court assumes familiarity with the affidavits supporting each warrant, but, in short, the affidavits allege that the Defendant used his cell phone to take pornographic pictures of his then-

1

girlfriend's three-to-four-year-old niece ("the Victim"),[1] as well as pictures of himself performing sexual acts on the Victim. In his suppression motion, the Defendant argued that neither search warrant was supported by probable cause and that a hearing would be necessary "to explore the probable cause issue in each of the search warrants." Docket No. 13 ¶¶ 3-5.[2]

The primary question raised by the Defendant's motion and objections is whether, given the unexplained delay in seeking each warrant, any probable cause that might once have existed was stale by the time each warrant was issued. The affidavit submitted in support of a warrant to search the Defendant's cell phone ("the Cell Phone Affidavit," Docket No. 14-1) was not submitted until approximately five months after the Buffalo Police arrested the Defendant and, as part of that arrest, seized the Defendant's cell phone. Similarly, the affidavit submitted in support of a warrant to search the Defendant's mother's apartment ("the Apartment Affidavit," Docket No. 14-2) was not submitted until approximately two months after agents first entered the apartment to arrest the Defendant on federal charges and, while in the apartment, observed evidence that they believed gave rise to probable cause.

Judge Roemer concluded that a hearing was not necessary to resolve the Defendant's motion; he concluded that each warrant was supported by probable cause; and he concluded that, even if the warrants were not supported by probable cause, exclusion was inappropriate because the agents who executed each warrant did so in

---

[1] The Victim is, of course, an alleged victim. For the sake of brevity, however, the Court refers to her as "the Victim." *Cf.* Fed. R. Evid. 412(d) ("In this rule, 'victim' includes an alleged victim.")

[2] At oral argument on the Defendant's objections, defense counsel stated that he is no longer requesting an evidentiary hearing. Instead, defense counsel's primary argument is that the warrants were not supported by probable cause.

good faith. *See* Docket No. 16 at 5-8. *See generally United States v. Leon*, 468 U.S. 897 (1984).

The Defendant objects to Judge Roemer's recommendations. The Court therefore reviews the recommendations *de novo*. *See* 28 U.S.C. § 636(b)(1).

**DISCUSSION**

Probable cause is, of course, a flexible concept. It "is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). This standard requires "only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157. At bottom, the probable cause standard requires an issuing magistrate to consider "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231 (quotation marks omitted). The probable cause standard, in other words, asks an issuing magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

Among the factors an issuing magistrate should consider in his "practical, common-sense decision" is the amount of time that has passed since the facts recited in an affidavit first arose. An issuing magistrate should, therefore, ask whether "the evidence supporting [a warrant] is . . . 'sufficiently close in time to the issuance of the warrant' that 'probable cause can be said to exist as of the time of the search.'" *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (quoting *United States v.*

3

*Wagner*, 989 F.2d 69, 75 (2d Cir. 1993)) (emphasis omitted). This simply requires an issuing magistrate to ask whether "the facts supporting criminal activity have grown stale by the time that the warrant issues." *Id*. And that requires the issuing magistrate to consider both "the age of the facts alleged" and "'the nature of the conduct alleged to have violated the law.'" *Id.* (quoting *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998)).

The task of a reviewing court, however, is not to assess in the first instance whether the facts put before the issuing magistrate rose to the level of probable cause—in other words, here, the Court does not ask whether it would have issued each of the warrants at issue had it been presented with the same facts that were presented to the issuing magistrates. Rather, "the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 238). This means that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236. Instead, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

The Court applies these principles to each of the warrants at issue.

**1. The search of the Defendant's cell phone**

The totality of the circumstances presented to the judge who issued the cell phone warrant provided him with a substantial basis to conclude that probable cause

4

existed to search the Defendant's cell phone for evidence of the Defendant's alleged sexual abuse of the Victim.[3]

The Cell Phone Affidavit provided ample evidence to raise a fair probability that the Defendant used his cell phone to photograph his alleged sexual abuse of the Victim. The affidavit first recounted the Victim's statement that the Defendant had committed certain specified sexual acts on her (Docket No. 14-1 ¶ 3), and it described evidence of sexual abuse, both on the Victim's body and on her clothing. *Id.* ¶¶ 5-7. Critically, the affidavit also stated that the Victim had reported "that [the] [D]efendant took photos of her with his cell phone, while her clothes were off, while she was 'in his bed.'" *Id.* ¶ 8. The affidavit also stated that the Defendant's cell phone was "currently in the custody of the Buffalo Police Department." *Id.* ¶ 9. And the affidavit suggested that the phone had been in police custody since a Buffalo Police Detective seized it from the Defendant following his arrest on state charges on November 18, 2015. *Id.* ¶¶ 9-11.

Nothing in the affidavit, however, explained the approximate five-month delay between when the Defendant's cell phone was seized and when the Buffalo Police Detective sought a warrant to search the phone.[4] The affidavit nonetheless provided a substantial basis for the issuing judge to conclude that probable cause existed to search the phone. Two facts support this conclusion.

First, the nature of the allegations in this case support the reasonable inference that the Defendant might have maintained pictures of his alleged sexual abuse on his cell phone, even months after he committed his last-reported instance of abuse in

---

[3] This case began with an investigation by the Buffalo Police Department. As a result, the cell phone warrant was issued by New York State Supreme Court Justice John L. Michalski based on an application from a Buffalo Police Detective.

[4] The affidavit was signed, and the warrant issued, on March 10, 2016.

5

September 2015. The Second Circuit has "recognized that the determination of staleness in investigations involving child pornography is 'unique.'" *Raymonda*, 780 F.3d at 114 (quoting *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006)). This is "[b]ecause 'it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.'" *Id.* (quoting *Irving*, 452 F.3d at 125)). As a result, "evidence that such persons possessed child pornography in the past supports a reasonable inference that they retain those images—or have obtained new ones—in the present." *Id*. To be sure, unlike the Second Circuit's decision in *Raymonda* and similar cases, the primary allegations here involve production of child pornography, rather than possession of child pornography. *Compare id.* at 114-15 (collecting cases addressing staleness issues in possession cases). In other words, this is not a case in which a person's prior download of child pornography, months before a warrant is issued, can support an inference that that person downloaded additional child pornography in the intervening months. This distinction is immaterial, however.

The principles underlying the Second Circuit's analysis of staleness in child pornography investigations comfortably support a probable cause finding in this case. This conclusion is based on the nature of the Defendant's alleged conduct and the period of time over which he engaged in it. The Cell Phone Affidavit, as noted, alleged that the Defendant sexually abused the Victim on multiple occasions over the course of—at the very least—several months in 2015, and that he photographed his abuse. The extreme nature of the alleged abuse—the affidavit recounts, for instance, graphic evidence of sexual abuse found on the Victim's body—and the Victim's statement that

6

the Defendant "took photos of her with his cell phone, while her clothes were off, while she was 'in his bed'" (Docket No. 14-1 ¶ 8), taken together, strongly "suggest[] that [the Defendant] had [taken such] images willfully and deliberately, actively [creating] them . . . to satisfy a preexisting predilection." *Raymonda*, 780 F.3d at 115. Moreover, the period of time over which the Cell Phone Affidavit alleged the Defendant produced child pornography gave the issuing judge further "reason to believe that the cited activity was probably not a one-time occurrence," meaning that "the passage of time between the last alleged event and the warrant application is less significant." *Raymonda*, 780 F.3d at 114. There was, therefore, a substantial basis for the issuing judge to reasonably infer that, even though the last identifiable instance of abuse took place nearly seven months prior to when he issued the warrant (Docket No. 14-1 ¶ 4), the Defendant had a "demonstrable interest" in creating child pornography and might, then, retain pictures of his alleged sexual abuse on his cell phone for his own gratification or for some other purpose. *See Raymonda*, 780 F.3d at 116. *See also United States v. Adams*, No. 2:14-cr-79, 2015 WL 5023784, at *3 (D. Vt. Aug. 25, 2015) (rejecting a staleness challenge to search of cell phone for evidence of production of child pornography where one alleged incident "occurred fairly far in the past," but where defendant "remained secretive about his phone and continued to possess the same one" and where defendant engaged in "pattern of alleged abuse and sexual interest in [victim] . . . over the course of several years").

The second reason why any staleness concerns are immaterial to the issuing judge's probable cause finding in this case is because the Cell Phone Affidavit informed the issuing judge that the cell phone had been held as evidence by the Buffalo Police

7

Department since the Defendant's arrest five months earlier. The issuing judge could, therefore, quite reasonably infer that whatever pictures were on the Defendant's phone at the time of his arrest would still be there five months later. In other words, the issuing judge could easily reach the "practical, common-sense" conclusion, *Gates*, 462 U.S. at 238, that any evidence of abuse on the Defendant's phone would not have disappeared or been deleted while the phone sat in police custody.

For these reasons, there was a substantial basis for the issuing judge to conclude that probable cause existed to search the Defendant's cell phone. As a result, the Court need not reach Judge Roemer's alternate recommendation that the executing officers acted in good faith. The Court therefore adopts Judge Roemer's recommendation to deny the Defendant's motion to suppress evidence recovered from his cell phone.

**2. The search of the Defendant's mother's apartment**

As with the cell phone warrant, the totality of the circumstances presented to Judge Roemer (who issued the apartment warrant) provided him with a substantial basis to conclude that probable cause existed to search the Defendant's mother's apartment for evidence of the Defendant's alleged child pornography production.

The Apartment Affidavit recounted the facts included in the Cell Phone Affidavit, but it also contained several other, newer facts relevant to the search of the Defendant's mother's apartment. First, the affidavit stated that a search of the Defendant's cell phone had uncovered approximately 14 images of child pornography depicting the Victim.[5] Docket No. 14-2 ¶ 7. Second, the affidavit stated that, when the Defendant

---

[5] The affidavit noted that the pictures appeared to have been deleted, but that agents were nonetheless able to review "cache files" that remained on the phone. *Id.* ¶ 7.

8

was arrested in his mother's apartment by federal agents, the agents had "observed a tan blanket in the living room with a large marijuana leaf symbol on it," as well as a Sony Playstation, which the Defendant's mother said belonged to the Defendant. *Id.* ¶ 11. The affiant stated that, based on his "training and experience," he was "familiar with the Playstation gaming device and [was] aware that it can be used to store digital files and access the internet." *Id.* Third, the affidavit stated that the Victim's aunt (who was also the Defendant's ex-girlfriend) corroborated the Defendant's mother's statement that the Playstation belonged to the Defendant. *Id.* ¶ 12. Fourth, the Victim's aunt told agents that the Defendant used the Playstation "to check his email but would not allow her to have access to it because he had pornography files saved on it."[6] *Id.* Fifth, when she was shown a sanitized pornographic picture of the Victim that had been recovered from the Defendant's cell phone, the Victim's aunt identified the tan blanket with the print of a marijuana leaf that had been seen in the Defendant's mother's apartment during the Defendant's arrest earlier that day. *Id.* ¶ 13. And sixth, in one of the pornographic images of the Victim found on the Defendant's cell phone, agents noticed that "[t]he male individual in the image [performing a sexual act on the Victim] is wearing blue jeans that are pulled down, and inside of the waistband of the pants the label contains white colored letters. The letter 'K' is visible as well as what appears to be a circular letter to the right of the 'K.'" *Id.* ¶ 15.

---

[6] In its opposition to the Defendant's objections, the Government states that the Defendant had "previously stated he used the Playstation to search for *child* pornography." Docket No. 21 at 7 (emphasis added). The affidavit submitted to Judge Roemer, however, alleged that the Defendant stated that he used the Playstation to search for "pornography"—not child pornography. It is therefore unclear whether the Apartment Affidavit's allegations regarding the Playstation would, by themselves, support a finding of probable cause to believe that evidence of child pornography offenses would be found in the Defendant's mother's apartment. However, given that the affidavit noted that other incriminating evidence—namely, the tan blanket and jeans believed to be the Defendant's—could be found in the Defendant's mother's apartment, the question whether the Playstation was used to search for adult or child pornography does not impact the Court's probable cause analysis.

9

The affidavit in support of the search warrant was submitted on May 23, 2016—just over two months after agents arrested the Defendant in his mother's apartment and observed the tan blanket and the Playstation. As with the Cell Phone Affidavit, the Apartment Affidavit provided no explanation for the delay in seeking a warrant.

There is little question that, had the agents sought a search warrant for the Defendant's mother's apartment shortly after his arrest, probable cause would have existed to search the apartment for evidence of the Defendant's alleged child pornography production—in particular, the tan blanket and the jeans.[7] Thus, the primary issue is, once again, staleness. That is, the question is whether the unexplained two-month delay in seeking a warrant affects whether a substantial basis existed for Judge Roemer to conclude that evidence of child pornography production would be found in the Defendant's mother's apartment. Unlike the staleness concerns raised by the Cell Phone Affidavit, nothing in the Apartment Affidavit suggested that evidence of a crime would necessarily be in the Defendant's mother's apartment several months after the agents first observed the blanket and the Playstation. In other words, nothing in the affidavit necessarily suggests that the Defendant's mother would have kept those items (as well as clothing alleged to be the Defendant's) months after he was arrested and detained.

An explanation for the delay in seeking the apartment search warrant would certainly have been helpful to the Court's probable-cause determination. But despite that deficiency, the Apartment Affidavit still provided a substantial basis for Judge Roemer to conclude that probable cause existed to search the Defendant's mother's

---

[7] Indeed, the Apartment Affidavit noted that the Defendant's ex-girlfriend identified the picture of the tan blanket on the same day the Defendant was arrested. Docket No. 14-2 ¶ 13.

apartment for evidence of the Defendant's alleged child pornography offenses. First, the affidavit noted that, following the Defendant's arrest by the Buffalo Police Department in November 2015, the Victim's aunt "ordered [the Defendant] to move out of her house"—where he had lived "for the past several years"—after which the Defendant "took all of his personal property with him including a Sony Playstation." Docket No. 14-2 ¶ 12. This fact supports a reasonable inference that, following his federal arrest, the Defendant would have had few places other than his mother's apartment to store his personal property. Second, none of the items sought to be seized—that is, the blanket, the Playstation, or the jeans—were perishable, nor were any of the items obvious contraband that someone might remove or destroy if they were attempting to protect the Defendant. The Defendant's mother, as noted, did not consent to a search of her apartment on the day of the Defendant's arrest, a fact from which an issuing judge could reasonably infer that the Defendant's mother might have removed incriminating evidence in the two months following the Defendant's arrest. But the fact that none of the items at issue were plainly incriminating—particularly to a layperson—reasonably suggests that *at least* one of the items would still be in the Defendant's mother's apartment several months after he was arrested.

The Court acknowledges that, given the unexplained delay in seeking a warrant for the Defendant's mother's apartment, whether probable cause existed to search the apartment is a closer question than whether probable cause existed to search the cell phone. But the Court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant," *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), and doing so here, the Court concludes that the facts recounted in the Apartment

Affidavit gave Judge Roemer a substantial basis to conclude that probable cause existed to search the Defendant's mother's apartment. Thus, as with the cell phone warrant, the Court need not reach Judge Roemer's alternate recommendation that the executing agents acted in good faith.

## CONCLUSION

For the reasons stated above, the Court adopts Judge Roemer's recommendation to deny the Defendant's suppression motion. That motion (Docket No. 13) is therefore denied. The parties shall appear on June 16, 2017 at 10:30 a.m. for a meeting to set a trial date.

**SO ORDERED.**

Dated: June 14, 2017         *s/Richard J. Arcara*
    Buffalo, New York       HONORABLE RICHARD J. ARCARA
                                  UNITED STATES DISTRICT JUDGE