UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.                                          **DECISION AND ORDER**
                                            16-CR-60-A
DUKE JIMENEZ,

Defendant.

Defendant Duke Jimenez has admitted that, on about May 10, 2014, he made images of a three-year-old girl with his cell phone as he raped and sexually abused her.  Defendant Jimenez has also admitted that he later possessed more sexually-explicit images that he used the girl to make at various times during an eight-and-a-half month period in 2014 when he babysat the girl for her mother.

Defendant Jimenez made these admissions when entering guilty pleas to one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  A Plea Agreement the defendant entered into contemplates an aggregate sentence of imprisonment of 50 years.

But defendant Jimenez now claims he is innocent of the production of child pornography count he pleaded guilty to, and he moves pursuant to Federal Rule of Criminal Procedure 11(d) to withdraw both guilty pleas.  The defendant argues that two Assistant Federal Defenders who represented him in succession during lengthy pretrial proceedings before he pleaded guilty, and then a third attorney who represented him during the guilty-plea proceeding, all failed to discover that he had

grounds to claim that he was too intoxicated to have acted with the specific intent necessary to be found guilty of making child pornography in violation of 18 U.S.C. § 2251(a). The defendant argues that his prior attorneys thereby gave him ineffective assistance of counsel under the familiar standard in *Strickland v. Washington*, 466 U.S. 668 (1984). He contends that he would not have entered the guilty pleas if he had known that he had the voluntary-intoxication defense to the production count. For good measure, the defendant also accuses his third attorney of being ineffective by misleading him about some terms of his Plea Agreement during the guilty-plea proceeding.

Notwithstanding defendant Jimenez's claims, he never suggested to his prior counsel that he might have been intoxicated when he made the sexually-explicit images underlying the charge, and, in fact, he had informed his prior counsel that he had no serious drug or alcohol problems. Even now, the defendant offers no specific evidence that he ingested controlled substances or was under chronic influence of controlled substances around the time of the May 10, 2014 production offense, and he says nothing about how his prior counsel could be found constitutionally ineffective for not concluding that his representations that he had no serious drug or alcohol problems were false.

When considering a claim of ineffective assistance of counsel, the Court assesses an attorney's conduct on the basis of the facts "viewed as of the time of counsel's conduct" and does not second guess counsel through hindsight. *Strickland*, 466 U.S. at 690. *Strickland* itself explains, "when a defendant has given counsel

reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* at 691. Accordingly, having given his prior counsel reason to believe that he did not have a serious substance abuse problem, defendant Jimenez fails to establish that counsel's investigation of his mental state at the time of the May 10, 2014 production of child pornography offense was in any way flawed, let alone that his counsel overlooked or disregarded his innocence.

Defendant Jimenez did raise with his prior counsel that he might have suffered from diminished capacity. He told his prior counsel that he had certain memory problems and sleeplessness that he thought were related to PTSD[1], and he asked counsel if these problems might give him a defense to the charges he faced. He also specifically asked if sleepwalking might be a defense, though he did not claim he was sleepwalking when he made child pornography on or about May 10, 2014, or that he believed that he had ever acted while in anything like a dissociative or autonomic mental state.

Partly as a result of defendant Jimenez's inquiries about possible defenses, his prior counsel retained a forensic psychologist who examined the defendant and prepared a report for counsel. His prior counsel also retained a neurologist and sleep-medicine specialist to consult about the defendant's specific complaints of insomnia and his questions about sleepwalking. And his prior counsel questioned some of the

---

[1] "PTSD" is posttraumatic stress disorder, which is commonly understood to be a mental disorder that can occur in people who have experienced or witnessed a traumatic event or events. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, pp. 271-80 (5th ed. 2013).

defendant's family members about his behavior around the time of the offense conduct.

Despite the relevance of the consultants' and family members' assessments of defendant Jimenez's behaviors and mental state, the defendant has not disclosed them in support of his claims that he lacked the specific intent to make child pornography, or even that he was a chronic drug abuser. Thus, while the defendant acknowledges that it is his heavy burden to establish that his prior counsel gave him constitutionally ineffective assistance of counsel, he has not suggested how the experts' findings and conclusions[2], or how the information his family provided, was incompetently handled by his prior counsel. Moreover, defendant Jimenez offers no evidence that his counsel overlooked a viable voluntary-intoxication defense, and he disregards his earlier statements about his mental condition and PTSD that may preclude that defense. For these reasons, and for all of the reasons stated below, the Court finds the defendant fails to meet his heavy burden to show that his prior counsels' investigation and advice were not objectively reasonable under *Strickland* and that he suffered prejudice as it is defined in *Strickland* and *Hill v. Lockhart*, 474 U.S. 52 (1985), by not being advised of a voluntary-intoxication defense. *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Finally, the Court also finds that defendant Jimenez was not misled about the

---

[2] Defendant Jimenez filed an interlocutory appeal (Dkt. No. 80) of an Order (Dkt. No. 79) finding that his allegations of ineffective assistance of counsel waived his attorney-client privilege and directing disclosure of certain attorney-client communications and consultants' reports. To simplify the proceedings, the Court later stayed the portion of the Order requiring counsel to disclose the consultants' reports. Text Order 88.

terms of his Plea Agreement by counsel in a confidential conversation during the guilty-plea proceeding. The defendant's claims that his prior attorneys gave him ineffective assistance of counsel are therefore all without merit. The defendant has no fair and just reason to withdraw his guilty pleas, and his motion to withdraw the pleas pursuant to Rule 11(d) is denied.

## BACKGROUND

A defendant may withdraw a guilty plea after the plea has been accepted by a court, but before sentencing, for "any fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). "[T]o determine whether [a] defendant has shown a 'fair and just reason' to justify withdrawal, a court considers, *inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (quoting *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004)). The Court also considers whether the defendant has raised any significant question about the voluntariness of the guilty plea. *Schmidt*, 373 F.3d at 103.

As is summarized above, defendant Jimenez alleges that he is innocent of the production of child pornography count that he pleaded guilty to, and that both of his guilty pleas were involuntary because he did not understand that he is innocent of the production charge when he pleaded guilty. The defendant alleges that his prior counsel, Assistant Federal Defender John F. Humann, Esq., Assistant Federal

Defender Mary Beth Covert, Esq., as well as John F. Molloy, Esq., all provided ineffective assistance of counsel under *Strickland*, 466 U.S. at 687–96, by failing to discover the defendant's viable voluntary-intoxication defense to the production of child pornography count.

Defendant Jimenez further alleges that his counsel at the time of the guilty plea proceeding, Mr. Molloy, neglected him and affirmatively misled him in a private conversation during the guilty-plea proceeding. He alleges that Mr. Molloy told him that some language in the parties' Plea Agreement that the defendant did not agree with — the defendant does not say what language in the Agreement he has in mind — would be revised after the proceeding, but it was never revised, and that Mr. Molloy was constitutionally ineffective under *Strickland* and *Hill* for this additional reason.

**The Proceedings Leading Up to the Guilty Pleas.** Defendant Jimenez was indicted on May 25, 2016, on five counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Dkt. No. 6. The charges stem from the defendant's use of his cell phone to take pictures while he was raping or sadistically sexually abusing a three-year-old girl at various times from February, 2014, through late October, 2014. Each of the five child pornography production counts carry a 15-year mandatory-minimum sentence of imprisonment with a maximum sentence of imprisonment of 30 years. 18 U.S.C. § 2251(e). The possession count carries a maximum sentence of 20 years imprisonment. 18 U.S.C. § 2252A(b)(2).

Assistant Federal Public Defender John F. Humann was defendant Jimenez's

first counsel during the pretrial phase of the proceedings.  The defendant filed pretrial motions and sought to suppress evidence seized from his cell phone and his residence pursuant to search warrants.  The defendant argued that the seizures violated the Fourth Amendment because probable cause for the warrants was stale by the time the warrants were authorized and executed.

By February 2, 2017, AFPD Humann represented to the Court that the parties were "close to a plea" when seeking an adjournment of oral argument of objections to a Report and Recommendation that recommended denying defendant Jimenez's motions to suppress evidence.  Dkt. No. 23, p. 2, ¶ 4.  But about five weeks later, the defendant wrote to the Magistrate Judge who was presiding over the pretrial proceedings and requested assignment of new counsel because the defendant was dissatisfied with Mr. Humann's representation.  *See* 3/10/2017 minute entry.  The defendant's request for an assignment of new counsel was denied at that time.  *Id.*

The Court eventually denied defendant Jimenez's motions to suppress evidence seized from his cell phone and residence in a Decision and Order filed on June 14, 2017.  Dkt. No. 29.  When the parties appeared to set a date for trial two days later, AFPD MaryBeth Covert took over representation of the defendant in the place of AFPD Humann.  Mr. Humann was reducing his caseload due to personal constraints, and the defendant had continued to express serious dissatisfaction with AFPD Humann's representation.  *See* 5/4/2017 minute entry, 5/15/2017 minute entry, and

Dkt. No. 28[3].  AFPD Covert was granted a 45-day adjournment on behalf of the defendant to become familiar with the case and to engage in plea negotiations.  *See* 6/16/2017 minute entry.

At the next appearance, on August 4, 2017, defendant Jimenez was granted 30 days more to evaluate two plea proposals.  Dkt. No. 55.  The negotiations had been underway since before February, 2017, and seemed to have been fairly far along even in February when Mr. Humann represented to the Court that the parties were "close to a plea."  *Id.*; Dkt. No. 23.

On September 8, 2017, defendant Jimenez was granted approximately two more weeks to consider pleading guilty.  *See* 9/8/2017 minute entry.  On September 22, 2017, the defendant indicated he would enter a guilty plea, and the change-of-plea proceeding was scheduled for October 3, 2017.  *See* 9/22/2017 minute entry.

On October 3, 2017, however, defendant sought additional time to review a plea agreement, and the change of plea was adjourned until October 30, 2017.  *See* 10/3/2017 minute entry.  The defendant also expressed serious dissatisfaction with AFPD Covert's representation, *see* Dkt. Nos. 30 and 31 (sealed letters from the defendant to the Court), and after a status-of-counsel conference on October 27, 2017, John F. Molloy, Esq., was appointed the defendant's counsel on October 30, 2017.  Mr. Molloy was the defendant's third attorney.  Proceedings were adjourned until November 20, 2017.  *See* 10/30/2017 minute entry.

---

[3] AFPD Jayme Feldman entered a notice of appearance on behalf of defendant Jimenez on November 16, 2016.  Dkt. No. 17.  AFPD Feldman's role seems to have been limited to assisting Mr. Humann before AFPD Covert took over as the defendant's counsel.

On November 20, 2017, Mr. Molloy sought another adjournment to continue plea negotiations. The Court was not privy to the substance of the parties' plea negotiations. *See* Fed. R. Crim. P. 11(c)(1) ("The court must not participate in [plea negotiations].) Nevertheless, instead of granting yet another adjournment, the Court scheduled jury selection and trial for January 17, 2018.

On December 7, 2017, defendant Jimenez and Mr. Molloy appeared and entered into the Plea Agreement pursuant to which the defendant pleaded guilty to Count 3 of the Indictment charging him with the production of child pornography on May 10, 2014, and Count 6 charging him with possession of child pornography on November 18, 2015. Dkt. Nos. 35 and 54. The production count was predicated upon:

> . . . visual depictions produced by the defendant [on May 10, 2014] depict[ing] the defendant engaging in sexual intercourse with Victim 1 and also depict[ing] Victim 1 touching the defendant's penis, as well as sadistic, masochistic and other depictions of violence.

Dkt. No. 35, p. 5, ¶ 8.b. When these images were produced, the victim ". . . was three years-old, and was in the custody, care, and supervisory control of the defendant." *Id.* at p. 5, ¶ 8.a. The possession count was predicated upon these images being found on a microSD card of the defendant's. *Id.* "In total, 18 image files were located on the SD card which depicted Victim 1 engaging in sexually-explicit conduct." *Id.* at p. 5, ¶ 8.c. The 18 image files were produced between February 10, 2014, and October 27, 2014. *Id.*

While under oath during the guilty-plea proceeding, defendant Jimenez stated

that he fully understood the charges, the facts underlying his guilty pleas, all of his trial rights, and the Plea Agreement. *See* Dkt. No. 54. The defendant stated that he agreed with everything in the Plea Agreement, that it was the only agreement concerning his pleas, and that he was entering the guilty pleas voluntarily and of his own free will. *Id.* According to the defendant's Plea Agreement, he faces an advisory range of imprisonment of 600 months (50 years), a mandatory minimum of 15 years imprisonment, and a maximum of 50 years imprisonment. Dkt. No. 35, ¶¶ 9-21.

Before defendant Jimenez entered the guilty pleas in December of 2017, he appeared with counsel for five plea-or-trial status conferences during the four months preceding entry of the pleas. *See* Dkt. Nos. 55-61. The Plea Agreement negotiated by Mr. Molloy, and entered into by the defendant on December 7, 2017, seems to have been similar to one of two alternative proposals Mr. Humann had negotiated on the defendant's behalf in February, 2017. Dkt. No. 92, ¶¶ 8-9.

### DISCUSSION

Defendant Jimenez has the burden to establish a fair and just reason to withdraw his pleas. *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016). While "th[e any-fair-and-just reason] standard implies that motions to withdraw [a guilty plea] prior to sentence should be liberally granted," *United States v. Doe*, 537 F .3d 204, 210 (2d Cir. 2008), a "guilty plea is a 'grave and solemn act,' not to be withdrawn lightly." *United States v. Hyde*, 520 U.S. 670, 677 (1997). "[S]ociety has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases

the volume of judicial work, and delays and impairs the orderly administration of justice." *Doe*, 537 F.3d at 211 (quotation marks omitted); *see United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997). Accordingly, neither "bald statements that simply contradict what [a defendant] said at his plea allocution," *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997), nor an after-the-fact change of heart, are fair and just reasons to withdraw a guilty plea. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

## I. Whether Defense Counsel Incompetently Investigated a Voluntary-Intoxication Defense.

Defendant Jimenez claims that his prior counsel were all ineffective under *Strickland* and *Hill* because they overlooked that the defendant had grounds to claim he was too intoxicated to form the specific intent to commit the production of child pornography offense in violation of 18 U.S.C. § 2251(a). Specifically, the defendant claims that he had, and has, "trouble remembering" the acts of rape and sexual abuse he admitted when he pleaded guilty, that he had been having problems sleeping because of symptoms of PTSD (post-traumatic stress disorder), that he may have been sleepwalking when he made the pornographic images, and that he was a chronic abuser of both MDMA (3,4-methylenedioxy-methamphetamine, or "Ecstacy," or "Molly") and marijuana. *See* Dkt. No. 75-2, ¶ 2, ¶ 7. The defendant contends that these circumstances were known to his prior counsel and are alone sufficient to require the Court to deliver a voluntary-intoxication instruction to a trial jury. *See e.g., United States v. Alfonso-Perez*, 535 F.2d 1362, 1365 (2d Cir. 1976) (a defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ."

(quotation and citations omitted). Certainly, a voluntary-intoxication instruction might help a jury consider whether the defendant specifically intended to use the child to make the visual depictions of sexually-explicit conduct.

Generally, to establish that counsel's assistance was constitutionally ineffective, a defendant must show under *Strickland*, 466 U.S. at 687–96, that: (1) counsel's performance "fell below an objective standard of reasonableness" and that (2) the error by counsel had an effect on the final judgment. *Id.* at 688. Ordinarily, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This means that defendant Jimenez's burden to show that counsels' performance was deficient is a "heavy one." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012).

In the context of a guilty plea, a defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), and that deciding not to plead guilty "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Whether a defendant would have rationally chosen to reject a guilty plea in favor of trial is "an inquiry that demands a 'case-by-case examination' of the totality of the evidence." *Lee v. United States*, 137 S. Ct. 1958, 1961 (2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). After-the-fact assertions from a defendant that the defendant would have rejected a plea agreement without contemporaneous objective evidence do not suffice. *Lee* 137 S.Ct.

at 1967; *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).  And a defendant

facing long odds at trial "will rarely be able to show prejudice from accepting a guilty

plea that offers him a better resolution than would be likely after trial."  *Lee,* 137 S. Ct.

at 1966.

### A.   Prior Counsels' Investigation of Memory, Sleep, and Substance Abuse Problems was Reasonable.

In this case, defendant Jimenez must first show that his prior counsel

unreasonably failed to consider evidence that the defendant was so severely

intoxicated that he lacked the specific intent to produce child pornography.  The

defendant argues:

> AFPD Covert also rendered deficient representation.  To her credit, she obtained the support of a medical professional to counsel her and her client regarding Mr. Jimenez's lack of memory claims, but her investigation focused on memory and sleepwalking alone – she failed to investigate *the cause of the lack of memory*.  This is important.  If she looked into this more, she should have made the link between substance abuse and the lack of memory.  This would have led her to the voluntary intoxication defense and the ability to counsel Mr. Jimenez more completely.  She did not do this which rendered her performance deficient and her advice ineffective and incomplete.

Dkt. No. 75-1, p. 11 (emphasis in original).  But the investigation of the defendant's

alleged diminished capacity undertaken by the Federal Public Defender's Office was

substantially more extensive than "obtaining the support of a medical professional,"

and the defendant offers only his present counsel's conclusory assertion to explain

why AFPD Covert and her successor, Mr. Molloy, should have discovered that the

defendant had a viable voluntary-intoxication defense to the May 10, 2014 production

offense.

Defendant Jimenez's statements to AFPD Covert that he was having trouble remembering the alleged offense conduct were partially addressed when counsel arranged for the defendant to be examined by a forensic psychologist, Dr. Daniel Antonius, on June 21 and June 30, 2017. During the examination, the defendant told Dr. Antonius that he had been smoking marijuana for "several hours daily" during some indefinite time period before his arrest in connection with the alleged offenses, but the defendant "was adamant that he never let his use of marijuana interfere with his daily life, including work and relationships." Dkt. No. 91, ¶ 27. The defendant's insistence that his use of marijuana did not interfere with his work and relationships was consistent with earlier statements the defendant made to an investigator employed by the Federal Public Defender's Office in April of 2016 that he had no drug or alcohol problems, Dkt. No. 91, ¶ 25, and was generally consistent with what he had told AFPD Covert about prior drug use. *See* Dkt. No. 91, ¶¶ 23-24, 27-28.

Needless to say, defendant Jimenez's explicit claim to Dr. Antonius that he was not impaired in his daily life despite his marijuana abuse corroborates his other denials of a substance abuse problem and tends to contradict the defendant's current speculation that the combined effects of marijuana and ecstasy use and chronic abuse left the defendant without specific intent to use the child he was babysitting to make sexually-explicit images on May 10, 2014.

The Court notes that defendant Jimenez's assertions that he has "trouble remembering any acts of the acts alleged in the Indictment" are limited to memories of

the alleged offense conduct.  *Compare* Dkt. No. 75-2, ¶ 2 and Dkt. No. 91, ¶ 14, *with*

Dkt. No. 75-1, p. 10-11.  Such episodic trouble remembering alleged offense conduct

could be associated with some mental health conditions, or with specific episodes of

severe voluntary intoxication, but the defendant claims chronic substance abuse over

an extended and indefinite time period.  The defendant's claim that his "trouble

remembering" should have led prior counsel to conclude that the defendant was

severely intoxicated on May 10, 2014 is not objectively probative in the face of the

contrary evidence the defendant gave his prior counsel.  He denied a substance abuse

problem.  No other specific evidence corroborates his claim of voluntary intoxication.

*See e.g.*, *United States v. Agnello*, 158 F.Supp.2d 285, 289 (E.D.N.Y. 2001).

AFPD Covert reviewed the July 1, 2017 report of Dr. Antonius' mental

examination with defendant Jimenez.  Based upon the forensic psychologist's report,

the AFPD advised the defendant he "did not have a trial defense based on his claim of

memory loss."  Dkt. No. 91, ¶¶ 14-16.  Despite his current claims, the defendant had

not told his prior counsel that he had been self medicating post-traumatic stress with

ecstacy, as well as with marijuana, and he does not claim that he told her.  *See* Dkt.

No. 75-1, p. 11.  Further, the assertion of chronic ecstasy abuse is not supported by

any statement in the defendant's Declaration in support of his motion to withdraw his

guilty pleas.  *See* Dkt. No. 75-2.  The assertion is inconsistent with statements made

by the defendant to the Federal Public Defender's Office investigator.  Dkt. No. 91,

¶ 25.  It is inconsistent with records that the Federal Public Defender's Office obtained

from the Niagara County Jail.  *Id.* at ¶ 26.  It is inconsistent with statements by the

defendant to Dr. Antonius. *Id.* at ¶ 27. It is inconsistent with what the defendant told AFPD Covert. *See id.*, at ¶ 23[4]. The claim that the defendant suffered diminished capacity due to the combined effects of chronic ecstasy and marijuana abuse is unfounded. The defendant identifies nothing that his prior counsel could have discovered to support a viable voluntary-intoxication defense.

The breadth of defendant Jimenez's prior counsels' investigation was also reasonable. The defendant's repeated requests that his counsel address a possible "sleep walking defense" prompted the Federal Public Defender's Office to consult a neurologist and sleep medicine expert. Dkt. No. 91, ¶¶ 17-22. The consultation led AFPD Covert to conclude that the defendant had no viable defense based upon sleep walking. *Id.* at ¶¶ 19-21. That conclusion was apparently bolstered by separate factual investigation, including conversations with the defendant's family about the defendant's behaviors, which ". . . further demonstrated that such a defense would not be viable." *Id.* at ¶ 21. Having been asked about any behaviors that may have evidenced sleep walking, the defendant's family apparently provided his prior counsel no reason to conclude that the defendant was observed in an dissociative or autonomic mental state potentially inconsistent with the ability to formulate a specific intent to act. The defendant was informed of the outcome of counsel's investigation and evaluation of a possible sleep walking defense, *id.* at ¶ 22, and he does not

_____

[4] When the defendant reviewed his substance use and abuse history with Dr. Antonius, the defendant said he had used ecstacy once and "molly" three or four times in his life. Dkt. No. 91, ¶ 27. Because the defendant's own Declaration in support of his motion to withdraw his pleas does not assert that he told his prior counsel that he was using or was a chronic abuser of ecstacy or "molly," as well as marijuana, *see* Dkt. No. 75-2, the Court concludes that no evidentiary hearing is required to address that assertion in his current counsel's memorandum. *See* Dkt. No. 75-1, p. 10-11.

challenge this portion of the investigation or counsel's advice.  Although the defendant

suggests his plea was involuntary because he was unaware of a viable voluntary-

intoxication defense, it bears emphasis that his prior counsel, especially AFPD Covert,

adequately investigated all the questions about the defendant's diminished capacity

that counsel had reason to investigate, and counsel communicated objectively

reasonable advice to the defendant based upon the results of the investigation.

After AFPD Covert was relieved as counsel for defendant Jimenez and Mr.

Molloy was appointed as his counsel, Mr. Molloy reviewed the investigative materials

compiled by the Federal Public Defender's Office and conferred with AFPD Covert

about the defendant's case.  Dkt. No. 92.  Mr. Molloy also conferred with the defendant

about a sleep walking defense and advised the defendant it was not a viable defense.

Mr. Molloy does not believe that the defendant ever told him that the defendant was or

might have been intoxicated during the alleged child pornography production offenses.

*Id.* at ¶¶ 3, 6, 8, 11-12.  He believes the defendant did not tell him that he was chronic

abuser of ecstasy and marijuana.  *See id.* at ¶ 11.  The defendant does not claim

otherwise.

In summary, defendant Jimenez made statements to his prior counsel and

others inconsistent with his present claim that he had been a chronic abuser of ecstacy

and marijuana.  The defendant adamantly denied that his marijuana use interfered with

his daily functioning when examined by a forensic psychologist.  His family apparently

told his prior counsel of no behaviors indicating the defendant acted without intent.

The defendant offers no new reason to conclude that his prior counsel should have

considered his professed trouble remembering the offense conduct as either direct evidence or circumstantial evidence of voluntary intoxication, and he points to no objective evidence that his prior counsel might have uncovered to corroborate a claim that he was so severely intoxicated that he lacked the requisite specific intent at the time of the May 10, 2014 production offense. Accordingly, primarily because the defendant gave his prior counsel reason to believe that he did not have a substance abuse problem, the defendant fails to show that his counsel's investigation of his mental state as of the May 10, 2014 production of child pornography offense was even deficient, let alone that it was a constitutionally-ineffective investigation. *Strickland*, 466 U.S. at 691.

**B. The Defendant Fails to Show Prejudice.** To establish an ineffective assistance of counsel claim, defendant Jimenez must also establish a reasonable probability that, but for his prior counsels' alleged errors, he would have rejected the Plea Agreement. *Hill*, 474 U.S. at 59. The defendant asserts simply that he would not have pleaded guilty if his prior counsel had been competent, presuming that his assertions about his diminished capacity alone would have required the Court to deliver a voluntary-intoxication jury instruction during a trial, and would have helped him prove his innocence. That presumption is unfounded.

By way of background, it is well settled that a defendant's intoxication may be "considered in determining whether a defendant was capable of forming the specific intent necessary to commit the crime charged." *Montana v. Egelhoff*, 518 U.S. 37, 47 (1996). And a criminal defendant is generally "entitled to have instructions presented

relating to *any* theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." *United States v. Alfonso-Perez*, 535 F.2d 1362, 1365 (2d Cir. 1976) (emphasis added; quotation and citations omitted)[5].

A defendant nevertheless bears the burden at trial of showing that there is a sufficient evidentiary foundation for a requested jury instruction before the instruction will be delivered to the jury. *United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016). And the defendant is generally required to point to evidence underlying the instruction "sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988); *see e.g.*, *United States v. Crowley*, 236 F.3d 104 (2d Cir. 2000) (voluntary-intoxication defense).

Accordingly, while a defendant has the fundamental due process, confrontation, compulsory process, and autonomy rights to present defenses, "[a] defendant's right to present relevant evidence is not unlimited, [and] is subject to reasonable restrictions."

---

[5] A voluntary-intoxication instruction the Court would likely use, if any, reads as follows:

There has been evidence that the defendant may have been intoxicated at the time of the offense with which he is charged.

Intoxication or drunkenness in itself is not a legal defense to a criminal charge. However, intoxication or drunkenness may negate the existence of the defendant's intent to commit the crime that the government must prove in order to convict.

On the evidence before you, if you find that the defendant was intoxicated, you may conclude that the defendant did not have the required intent I described earlier. On the other hand, even if you believe that the defendant was intoxicated to some degree, you still may conclude that he was capable of having the required intent. After considering all of the evidence, if you find that the government has established each of the elements beyond a reasonable doubt, then you may find the defendant guilty. On the other hand, if you find the government has failed to meet this burden beyond a reasonable doubt, you must find the defendant not guilty.

Sand *et al.*, 1-8 *Modern Federal Jury Instructions — Criminal*, ¶ 8.03 (Matthew Bender) (citing *United States v. Rahman*, 189 F.3d 88, 142–43 & n.18 (2d Cir. 1999)).

*United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Clark v. Arizona*, 548 U.S. 735, 769-70 (2006); *see Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001). A defendant "[c]learly . . . does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). In this context, defendant Jimenez needs at least enough admissible evidence of voluntary intoxication for a reasonable juror to doubt whether he had specific intent to produce child pornography on May 10, 2014 because of his voluntarily intoxication to show he would have been entitled to the voluntary-intoxication instruction.

To be clear, defendant Jimenez does not assert that he actually lacked the requisite intent to use the child to make sexually-explicit images on May 10, 2014, or ever. *See generally* Dkt. Nos. 75-1, 75-2. Instead, the defendant maintains that he suffered generally from diminished capacity, including "trouble remembering any of the acts alleged in the Indictment," due to the combined ill-effects of PTSD and chronic substance abuse. *See* Dkt. No. 75-2, ¶ 2, ¶ 7. The defendant does not explain how he contends these symptoms or conditions relate to the specific intent element of the offense; he contends that his plea must be found involuntary because he was not advised that he had a viable voluntary-intoxication defense. But the Court finds that the defendant lacks even "weak or incredible" evidence that voluntary intoxication rendered him without specific intent to produce child pornography on May 10, 2014.

First, defendant Jimenez proffers no foundational evidence that he in fact

consumed intoxicating substances and was severely intoxicated on May 10, 2014

when he made still images as he raped and violently sexually abused the child.  *See*

Dkt. No. 75.  He has trouble remembering his substance abuse around the time of his

actions to make the images, and he seems to believe that he was more or less

constantly under the influence of his ongoing and long-term abuse of marijuana.  *See*

Dkt. No. 75-2, ¶ 2, ¶ 7.  He further believes that his self-diagnosed PTSD contributed

to his diminished capacity.  But this sort of general and temporally indefinite diminished

capacity evidence is not likely to be admissible.  *See e.g.*, *United States v. Agnello*,

158 F.Supp.2d 285, 289 (E.D.N.Y. 2001).

Second, defendant Jimenez has no evidence that what he describes presently

as his chronic abuse of marijuana caused him to act with or without any particular

purposes while he sexually abused the girl on May 10, 2014.  Testimony about the

effects of chronic substance abuse on a person's mental status requires scientific,

technical and specialized knowledge that the defendant lacks, Fed. R. Evid. 701(c)

and 702, and the defendant has neither expert witness opinion evidence nor other

evidence to support a theory that chronic substance abuse caused his memory

problems, let alone that it caused behaviors consistent with a lack of specific intent to

use the child to make sexually-explicit images.  Moreover, any lay opinion testimony

that the effects of chronic substance abuse are causing the defendant not to

remember whether he had the specific intent to produce child pornography on May 10,

2014, or even that his lack of such a memory somehow tends to show that he in fact

lacked the requisite intent at the time of the offense, is certainly inadmissible.  Fed. R.

Evid. 701.  That testimony would be speculative lay opinion testimony of causation not rationally based upon any witness' perceptions, including the defendant's perceptions. *Id.*

Defendant Jimenez's own testimony could be admissible if it were of his own relevant utterances, conduct and symptoms on or around May 10, 2014.  Fed. R. Evid. 602, 701.  But that testimony is not admissible on why he does not remember the offense conduct[6] or whether chronic substance abuse might have caused him to have been in a dissociative or autonomic state while raping and abusing the girl.

Of course, the same holds true for defendant Jimenez's apparently self-diagnosed PTSD and his claims that it was the combined effects of substance abuse and his PTSD that diminished his capacity to form specific intent.  *See e.g.*, *Mercado v. Dep't of Corrections*, No. 3:16-CV-01622-VLB, 2019 WL 625697, at *3-4 (D. Conn. Feb. 14, 2019).  Even expert opinion testimony on this topic is "permitted only in rare and narrowly defined circumstances because of the high likelihood that it will result in the resurrection of precisely the kinds of [diminished capacity] defenses the [Insanity Defense Reform Act, 18 U.S.C. § 17] was enacted to prohibit."  *United States v. Sabir*, 04–CR–673, 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007).  It would therefore be the defendant's burden to establish the fit of any mental-health expert opinion within

---

[6]  The Court concludes that testimony by defendant Jimenez that he does not remember why he made the sexually-explicit images as he raped and sadistically abused the child on May 10, 2014 could be relevant under Fed. R. Evid. 401 if the testimony were offered to show that the defendant forgot making the images because his use of the child to make the images was merely an incidental purpose of his actions.  But the defendant professes trouble remembering any of the acts he actually took to make the sexually-explicit images.  The testimony of his memory problems is therefore only a speculative basis for an inference about his specific purposes for using the girl on May 10, 2014, and would be inadmissible under Fed. R. Evid. 602 and 403 if offered on his lack of specific intent theory.

the narrow confines of evidence tending to negate his specific intent, *id.*; *see also United States v. Levin*, No. 15-cr-101, 2016 WL 299031, at *7-9 (S.D.N.Y. Jan. 25, 2016), and the defendant does not take up that burden.

Accordingly, defendant Jimenez has neither admissible foundational evidence that he consumed controlled substances close enough in time to the offense to cause acute voluntary intoxication nor even the prospect of admissible opinion evidence of the causal effects of chronic substance abuse that would have permitted him to raise a voluntary-intoxication defense if he had rejected the Plea Agreement and gone to trial[7]. The defendant has neither expert nor lay opinion to provide a jury with a causal link between effects of chronic substance abuse and a lack of specific intent, and he has no other evidence that he behaved in ways indicative of a dissociative or autonomic mental state around the time of the production of child pornography offense to which he pleaded guilty.

For these reasons, the Court finds defendant Jimenez does not have a viable voluntary-intoxication defense. His claim that the defense is viable is based entirely on speculation that is insufficient to support a claim of prejudice due to alleged errors of his prior counsel, let alone his claim of innocence based upon a lack of specific intent[8].

_____

[7] The Court finds defendant Jimenez's citations to articles from scientific journals that conclude that chronic substance abuse can be associated with and may cause cognitive deficits, including memory impairments, do not, even in the context of all of the defendant's claims, warrant an evidentiary hearing.

[8] Defendant Jimenez does not claim that he would have rejected the Plea Agreement and gone to trial on a voluntary-intoxication defense even if he had been informed of the defense and specifically advised by counsel that it was not viable. The Court therefore does not consider whether it would have been the defendant's Sixth Amendment autonomy right to pursue the losing defense or his counsel's proper strategic choice not to pursue it. *Compare McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), *with Panuccio v. Kelly*, 927 F.2d 106 (2d Cir. 1991).

Finally, if the defendant had elected not to enter into the Plea Agreement, he would have subjected himself to trial and potential conviction on four additional counts of production of child pornography in violation of 18 U.S.C. § 2251(a). Each count carries a mandatory-minimum sentence of 15 years imprisonment, up to a statutory maximum of 30 years (assuming he has no prior qualifying sex offenses). 18 U.S.C. § 2251(e). In light of his potentially increased criminal liability, and the unfounded basis of his claim to a voluntary-intoxication defense, the defendant has not shown that it would have been rational for him to have rejected the Plea Agreement and to have proceeded to trial. Dkt. No. 75-2, p. 4, ¶ 8. All he says is that "[i]f I was made aware of [the voluntary-intoxication defense] by my previous attorneys, I would not have entered into the plea agreement or entered pleas of guilty . . . ." *Id.*; *see also* Dkt. No. 75-1, pp. 12-13. He proffers no evidence that a more favorable plea could have been negotiated if he had raised a potential voluntary-intoxication defense.

The United States did not provide a summary of the evidence it would offer at trail to prove defendant Jimenez's specific intent to use of the child for the purpose of making child pornography as alleged in Counts 1, 2, 4, and 5 of the Indictment. However, given that the factual basis for his guilty plea to Courts 3 and 6, includes the nearly nine-month duration of the charged sexual abuse and the defendant's possession of 18 image files on a date 10 months after the first charged sexual abuse, see Dkt. No. 35, ¶¶ 7-8, pp. 4-5 (elements and factual basis); Dkt. No. 54, pp. 2, 12-16 (same); Dkt. No. 1, p. 6, ¶ 8 (defendant's false exculpatory statements), the Court finds

the proof is likely to be strong. He would likely face an even longer sentence of imprisonment if he rejected the Plea Agreement and was convicted of additional counts of production of child pornography than the 50-year advisory Guidelines sentence he faces now. The defendant has failed to carry his burden to establish that "a decision to reject the plea bargain would have been rational under the circumstances." *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

## II. Whether Defense Counsel Promised to Change the Plea Agreement After the Guilty Pleas were Entered.

When defendant Jimenez entered his guilty pleas on December 7, 2017, the defendant was placed under oath, acknowledged understanding the oath, and was instructed and encouraged to proceed deliberately:

| | |
|---|---|
| THE COURT: | Sir, you're now under oath. And being under oath during the course of these proceedings, I'll be asking you some questions. You'll have to answer those questions honestly and truthfully. If you were to give me any false answer, that false answer may be used against you in a further proceeding brought by the government on a charge of perjury or making a false statement while under oath. Do you understand that, sir? |
| DEFENDANT: | Yes. |
| THE COURT: | It is also very important you understand what your rights are. If at any time during the course of these proceedings there's something you want clarified, you want to talk to Mr. Molloy, you want to ask me a question, I can do that. I'm encouraged -- you're encouraged to do it if you have a question. We're in no hurry here. So, make sure that you, if you have any questions, you'll be able to have them clarified. Okay? |
| DEFENDANT: | Yes. |

Dkt. No. 54, pp. 1-2.

The Court immediately asked defendant Jimenez and his counsel to generally

confirm that any guilty plea that the defendant might enter would be a knowing plea:

THE COURT:     Now, it's my understanding that you're here today to waive certain rights and to plead guilty to Count 3 and Count 6 of the indictment under the terms and conditions of the plea agreement. Do you understand those two charges, sir?

DEFENDANT:     Yes.

THE COURT:     Mr. Molloy, you have gone over those two Counts with your client? Are you satisfied he understand it?

MR. MOLLOY:    I am, Your Honor.

THE COURT:     Any reason for me to go through any further explanation?

MR. MOLLOY:    None.

THE COURT:     And you have reviewed with him the terms and conditions of the plea agreement and he understands them?

MR. MOLLOY:    I have gone over it with him, yes.

THE COURT:     And his rights under Rule 11, right to a trial, et cetera?

MR. MOLLOY:    Yes, Judge.

THE COURT:     Now, sir, you have discussed this matter with your attorney. He's explained to you what your legal rights are, what your legal options are. You probably didn't like to hear what he had to tell you, but he's not there to make you feel good. He's there to be your legal advisor. And apparently, based on those discussions, you're here today to waive certain rights and to plead guilty to these two charges under the terms and conditions of the plea agreement. Are you fully satisfied with the advice and counsel you've received from Mr. Molloy?

DEFENDANT:     Yes.

THE COURT:     Any complaints about Mr. Molly's representation of you?

DEFENDANT:     Not at this time, no.

Dkt. No 54, pp. 2-3.  The defendant was thus made aware that the Court expected

to be told whether the defendant had any complaint about his counsel.

Defendant Jimenez now alleges that he had only a few unsatisfactory minutes to speak to Mr. Molloy before the December 7, 2017 plea proceeding, and that Mr. Molloy privately promised him during a short interruption later during the proceeding that some changes the defendant wanted made to the Plea Agreement would be made after the plea proceeding concluded.  Dkt. No. 75-2, ¶ 5, pp. 2-3.

Nevertheless, defendant Jimenez denied, while under oath just before he admitted his guilt, that any such promise had been made to him:

| THE COURT: | Now, sir, we've gone over the agreement in court. You indicated you understand it. And you signed it, indicating you understand it. Mr. Molloy has indicated that he's gone over it with you and he's satisfied you understand it.  Any questions, sir? |
|---|---|
| DEFENDANT: | Not at this moment, no. |
| THE COURT: | Are these all the terms and conditions of the plea agreement which we just read here in court? |
| DEFENDANT: | Excuse me? |
| THE COURT: | Are these all the terms and conditions of the plea agreement? No one has made any other promises to you, have they? |
| DEFENDANT: | Yes. I understand it. |
| THE COURT: | I'm sorry? |
| DEFENDANT: | Yes, I understand it. |
| THE COURT: | No one's made any other promises to you, have they? |
| DEFENDANT: | Oh, no, Your Honor. |

Dkt. No. 54, p. 25.

At the end of the written Plea Agreement, the agreement includes an integration clause and other language for defendant Jimenez and his counsel to affirm that no other promises or representations had been made to the defendant and that the Plea Agreement is the entire agreement:

> I have read this agreement, which consists of 15 pages. I have had a full opportunity to discuss this agreement with my attorney, John J. Molloy, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

Dkt. No. 35, p. 15. Defendant Jimenez and Mr. Molloy signed the Plea Agreement on signature lines right under this paragraph stating that the defendant had a full opportunity to discuss the agreement and that there were no other promises or representations. The above-quoted language was read by the prosecutor, word-for-word, shortly before the defendant said that he was guilty of Counts 3 and 6 of the Indictment. Dkt. No. 54, pp. 23-24.

Mr. Molloy confirms in an affidavit that defendant Jimenez asked whether some changes could be made to the Plea Agreement during the change of plea proceeding. Dkt. No. 92, ¶¶ 8-9. But none of the changes had to do with a defense, and Mr. Molloy told the defendant that no further changes to the agreement would be acceptable to the United States. *Id.* The proceeding continued until the defendant admitted his guilt and the guilty pleas were accepted by the Court after the Court made specific findings that the pleas were knowing, voluntary, and supported by a factual basis. *See* Dkt.

No. 54, p. 32.

During oral argument of the motion to withdraw defendant Jimenez's guilty

pleas, the defendant's present counsel suggested there were miscommunications

between the defendant and prior counsel.  But the defendant has made no showing of

a miscommunication.  The defendant states in an affidavit:

> I entered the pleas pursuant to the plea agreement thinking
> that Mr. Molloy had made changes to the agreement like we
> discussed.  When I saw things during the plea hearing that
> were not changed in the agreement, I turned to Mr. Molloy to
> point that out.  The Court paused and asked Mr. Molloy if
> everything was alright.  He said it was and told me that he
> would change those things later.  Thinking things would be
> taken care of, I continued with the hearing.

Dkt. No. 75-2, ¶ 5, pp. 2-3.  The defendant's affidavit does not identify any specific

changes he thought were to be made to the Plea Agreement.  And the colloquy

between the Court and Mr. Molloy that the defendant seems to recall was:

THE COURT:      Just a second. Mr. Molloy, you want to talk to your client?

MR. MOLLOY:     No, Your Honor. There was just a question about the
                appeal.

THE COURT:      Oh, okay.

Dkt. No. 54, p. 23.  Minutes later, when the Court asked the defendant whether

anyone had made any other promises to him not in the Plea Agreement, the

defendant said, "Oh no, Your Honor."  Dkt. No. 54, p. 25.

Defendant Jimenez's current counsel suggests that these "changes" had to do

with the defendant's "mental state and lack of memory at the time of the offense."  Dkt.

No. 75-1, p. 13[9].  Moreover, those are part of the grounds for the defendant's claim of innocence and his claim that his pleas were involuntary on the theory that he did not appreciate that he could claim innocence because he was too intoxicated to intend to use the child to make the sexually-explicit images he made and are not mere "changes" to the Plea Agreement.  In any event, counsel's suggestion is contradicted by the defendant's repeated statements under oath during the plea proceeding that he understood all the provisions in the Plea Agreement, that the Plea Agreement was the entire agreement between the parties, and confirming that the defendant was "fully agree[ing] with the contents of" the Plea Agreement.  Dkt. No. 35, p. 15.

During defendant Jimenez's plea proceeding, the Court spoke directly to him about his background, his mental state, and about his understanding of the charges against him.  *See* Dkt. No. 54.  The Court confirmed the defendant's understanding of the terms and conditions of the Plea Agreement, and his awareness of the relevant circumstances and likely consequences of the guilty pleas.  *Id.*  The Court observed the defendant during the proceeding and confirmed his understanding during a nearly word-for-word review of the Plea Agreement and frequent colloquy about the topics covered in the Plea Agreement.  *Id.*  The Court confirmed the defendant's understanding as the Court advised him about the fundamental and important rights he would be waiving if he went ahead with the guilty pleas.  *Id.* at pp. 29-31.  The Court

---

[9]  Defense counsel's suggestion is not supported by any statement in defendant Jimenez's Declaration in support of his motion to withdraw his pleas, Dkt. No. 75-2, and is contradicted by Mr. Molloy's affidavit.  Dkt. No. 92, ¶ 10 ("The [] changes requested by Mr. Jimenez did not involve intoxication or anything else as a possible defense.")  The suggestion of the defendant's current counsel does not warrant an evidentiary hearing.

also confirmed the defendant's understanding as the Court heard and evaluated the proposed factual basis for the guilty pleas. *Id.* at pp. 13-16. Having listened to the defendant's responses and observed his behavior during the plea colloquy, *see e.g.*, Dkt. No. 54, p. 23, the Court concluded that the defendant was being truthful when he said under oath that no other promises had been made to him and when he confirmed that he was "fully agree[ing] with the contents of" the Plea Agreement. Dkt. No. 35, p. 15; Dkt. No. 54, p. 23.

Defendant Jimenez's statements in support of his motion to withdraw his guilty pleas because he had a private promise from Mr. Molloy to change something in the Plea Agreement after it was formally entered "simply contradict what he said at his plea allocution." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997); *see United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001). In light of the proceedings during the ten months leading up to the change-of-plea proceeding — especially during the last four months when he appeared in Court for seven conferences to report on the status of plea negotiations or to schedule a trial — and in light of the grave atmosphere in the courtroom during the December 7, 2017 change-of-plea proceeding, and the defendant's demeanor and answers during that plea proceeding, and in light of Mr. Molloy's affidavit, Dkt. No. 92, the Court finds the defendant's claim that he somehow believed he had a promise by Mr. Molloy to change the language of the Plea Agreement after the formal plea proceeding, even as a result of some sort of miscommunication, to be incredible. The defendant would not have confirmed he was fully agreeing with the contents of the Plea Agreement if he believed it was to be

changed afterwards. Under the circumstances, the Court finds the defendant's claim of being misled by Mr. Molloy does not merit an evidentiary hearing and is plainly insufficient to justify withdrawal of the defendant's pleas under Rule 11(d). *Torres,* 129 F.3d at 715.

The Court notes that, if defendant Jimenez did raise concerns during the plea proceeding with Mr. Molloy about the defendant's mental state and lack of memories that related not to his guilt, but to the mitigation of punishment, those concerns would properly be addressed after the guilty plea proceeding. The record shows that the defendant was interviewed by a United States Probation Officer, in Mr. Molloy's presence, shortly after the change of plea proceeding on December 7, 2017. Dkt. No. 46 (February 28, 2018 Presentence Investigation Report (the "PSR") docketed under seal). The defendant did not claim innocence, and he said that he was not using his drug abuse as an excuse for the offenses. *See id.* at ¶¶ 24-26. While the PSR does not mention sleepwalking, symptoms of a sleep disorder, or any lack of memory of the offense conduct, it shows that the defendant told the Officer that he believed he suffers from PTSD and that he was self-medicating with about one-quarter ounce of marijuana daily. *Id.* at ¶ 83; see id. at ¶¶ 76-78. The PSR notes the defendant reported "experimenting" with ecstacy six or seven times in about 2015, the year after the production offense he admitted. *Id.* at ¶ 85. Nothing in the PSR suggests that the defendant or any other person the Officer spoke to during the presentence investigation reported that the defendant had ever experienced a loss of conscious volitional control due to sleepwalking, chronic narcotics abuse, or any other cause.

**CONCLUSION**

For the reasons stated above, the Court finds that the defendant, Duke Jimenez, entered his guilty pleas voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The defendant has failed to carry his burden to show that the guilty pleas he entered were involuntary, were tainted by ineffective assistance of counsel, or that there is otherwise a fair and just reason for him to withdraw the pleas. His prior counsel gave him objectively reasonable advice, and withdrawing the pleas would be irrational because it would likely lead to an even more lengthy sentence of imprisonment for the defendant. The defendant's motion pursuant to Fed. R. Crim. P. 11(d) to withdraw his pleas is therefore denied.

**IT IS SO ORDERED.**

*S/Richard J. Arcara*

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: May 21, 2019